DOWNEY, Judge.
Appellee sued appellants to determine its rights under a condominium land lease and to obtain damages. The trial court entered a comprehensive partial final judgment construing the lease in favor of the appellee and another final judgment awarding damages to appellee. Those judgments are the subject of these appeals.
Appellants were the developers of a 153 unit condominium apartment building in the City of Fort Lauderdale known as Marine Tower Condominium. Appellee is a condominium association created pursuant to Chapter 711, Florida Statutes 1969. Appellants leased to the condominium association for 99 years a certain parcel of property surrounding the condominium apartment building. Said property contained a two-story parking garage, additional uncovered parking, a swimming pool, and other recreational facilities. Part of the two-story parking garage extended into the first two floors of the condominium building. At the completion of construction of the apartment building and the parking garage there existed 153 covered parking spaces which were assigned to the 153 apartment unit owners. Twenty-nine of those assigned spaces were in the part of the two-story parking garage that extended into the first two floors of the condominium building. In addition, there were 68 other parking *1100 spaces, 19 of which were covered and 49 uncovered.
The condominium documents, which were delivered to each apartment unit purchaser, contained, among other things, a copy of the aforementioned lease. The Declaration of Condominium provided that each unit owner must execute an agreement acknowledging the agency of the condominium association for such owner and agreeing to be bound by the terms and conditions of the lease and to pay his designated portion of the lease rental.
The property conveyed under the lease is land surrounding the condominium apartment building; no part of the description includes the condominium apartment building or the land upon which the building is situated. Article III of the lease pertains strictly to the rent to be paid for the property conveyed thereunder. Among other things, that article provides:
“The final annual ground rental figure (i. e., the collective rental) will be determined at the time of the completion of the building and shall be based on the number of parking spaces provided and the number of individual condominium units in the condominium building. Each apartment unit will have one covered parking space permanently assigned to it. Said total annual rental will be arrived at by adding the sum of the individual apartment and assigned parking space rentals, (i. e., Type ‘A’ apartments $45.00 per month; Type ‘B’ apartments $55.00 per month; Type ‘C’ apartments $65.00 per month; Type ‘D’ apartments $65.00 per month; Type ‘E’ apartments $65.00 per month; Type ‘F’ apartments $65.00 per month; Type ‘G’ apartments $65.00 per month) to the extra and unassigned parking spaces (a maximum of sixty-eight spaces, both covered and uncovered, at $180.00 per year covered and $100.00 per year uncovered). It is estimated that of the 68 unassigned parking spaces, 19 will be covered and 49 will be uncovered. The result shall be the rental figure which will hereafter remain constant except where expressly adjusted or change by the terms of the lease.”
In the trial court appellee contended that the 29 spaces included in the part of the garage that extended into the first two floors of the condominium building were common elements and thus appellants could not lease said spaces to the association and collect rent therefor. Appellants on the other hand argued that the lease in question did not purport to lease the 29 spaces, nor could it do so since concededly those spaces were part of the common elements. Appellants further argued that the rental for the land leased was arrived at by a formula which used the number of individual condominium units and the number of parking spaces the developers furnished as a basis for computing the amount of rent to be paid. The trial court concluded that appellee’s position was correct and entered, judgments that (a) declared the 29 spaces were improperly included in determining the rent to be paid and that no further rent could be charged for said spaces, and (b) awarded appellee damages for rent paid in the past for said 29 parking spaces.
Our study of the briefs and record convinces us that both appellee and the trial court misconstrued the effect of the lease.
First of all, it cannot be seriously contended that the lease in question purports to convey the 29 spaces in the first two floors of the condominium building. The property conveyed in the lease is described by metes and bounds description and is nothing more than the land around the condominium building and improvements thereon. No part of the building is described.
Secondly, it should be remembered that the lease was prepared and executed prior to completion of construction of the condominium building. According to its terms there were to be 153 assigned covered spaces, one for each apartment unit, and a maximum of 68 other unassigned spaces. In order to determine a fair rental value for the property leased, the developer seized upon a formula which used the number of parking spaces as a determinant to arrive *1101 at the total rental to be paid for the land leased. The lease states that the rental “shall be based on the number of parking spaces provided and the number of individual condominium units in the condominium building.” It then provides that the dollar amount shall be arrived at by adding the sum of (1) the individual apartment and assigned parking space rentals and (2) the extra and unassigned parking spaces. Category (1) involves the 153 assigned parking spaces, including the 29 spaces in the condominium building. The amount specified to be attributable to each of these spaces depends upon the type of apartment to which it is assigned. For example, Type A apartments are to pay $45.00 per month, Type B apartments $55.00 per month, and so on. The second category includes all other unassigned spaces at a rate of $180 per year for covered spaces and $100 per year for uncovered spaces.
The parties to the lease are the developers and the condominium association. The formula contained in the lease for determining the rent was devised so as to enable the association to make a charge against each unit owner for parking space used, so as to provide income to the association to enable it to pay the ground rent due under the lease.
At first blush, appellee’s argument that appellants are collecting rent for part of the common elements which they could not convey sounds valid. But when subjected to closer scrutiny it misses the mark. The lease could just as well have provided that the rental for the land leased should be based upon $55.00 per month for each of the 153 apartment units (all of which were assigned one covered parking space), and in addition $180 per year for any unassigned covered parking space, and $100 per year for any unassigned uncovered parking space. Or the lease could have stated a flat rental figure without stating any formula upon which the ultimate figure is based. Then, of course, the association would have had the problem of determining how to obtain the funds to pay the ground rental for the parking facilities and the swimming pool and other recreational facilities.
The original lease was amended by the parties in October 1971, and a great deal of time and effort was expended in the trial court with reference to that amendment. However, appellee has contended throughout this case that the amendment had no effect on the validity of the rent formula vis-a-vis the 29 spaces in the first two floors of the condominium building. Therefore, the amendment is not material to our decision.
In view of the foregoing, it is not necessary for us to comment upon the other numerous points raised by appellants, except the contention that appellants were entitled to attorney’s fees and costs in the trial court pursuant to the provisions of the lease. Since appellants are now the prevailing parties, the lease entitles them to have the trial court award them reasonable attorney’s fees plus costs on remand. It also follows that appellee’s point on cross appeal (that the damages the court awarded were inadequate) is without merit.
Accordingly, we reverse the judgments appealed from and remand the cause with directions to enter a judgment for appellants consistent with this opinion.
CROSS, J., and SCHULZ, GEORGE E., Associate Judge, concur.